**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| North Dakota Department of Human Services, State of North Dakota ex rel. Executive Director acting by & through Carol K. Olson, | ) ) ) ) ) | **ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND DENYING MOTION FOR FEES AND COSTS** |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 1:09-cv-077 |
| Center for Special Needs Trust Administration, Inc. and Damian J. Huettl, | ) ) ) | |
| Defendants. | ) | |

_____

Before the Court is the Plaintiff's "Motion for Remand and for Award of Fees and Costs Under 28 U.S.C. § 1447(c)" filed on December 24, 2009. See Docket No. 8. On January 7, 2010, the Defendants filed separate responses in opposition to the motion. See Docket Nos. 11 and 12. The Plaintiff filed a reply brief on January 12, 2010. See Docket No. 14. For the reasons set forth below, the Court grants the motion to remand and denies the motion for attorney's fees and costs.

**I.    BACKGROUND**

The Medicaid program, 42 U.S.C. §§ 1396-1396v, was created in 1965 and is designed to furnish medical assistance to persons "whose income and resources are insufficient to meet the costs of necessary medical services." 42 U.S.C. § 1396. The federal Medicaid program authorizes grants to the states to help fund medical assistance programs and specifies requirements for the administration of the state programs. Medicaid eligibility is determined by a needs-based analysis and coverage is denied if the applicant exceeds a ceiling in countable assets.

Prior to 1993, individuals had many techniques to transfer their property into a trust in order to qualify for Medicaid. The Omnibus Budget Reconciliation Act of 1993 (OBRA) created a transfer penalty system in the Medicaid program. Many of the transfer techniques used before OBRA now generate transfer penalties, resulting in a period of time where the individual would be ineligible for Medicaid. However, certain exemptions from the transfer penalty system exist. One such exemption is commonly referred to as a "pooled trust" described in 42 U.S.C. § 1396p(d)(4)(C), in which an individual can transfer his or her own funds into a trust which allows the income and assets of a number of persons with disabilities to be managed by a nonprofit organization. Pursuant to 42 U.S.C. § 1396p(d)(4)(C), a pooled trust is one that contains the assets of an individual who is disabled and meets the following conditions:

> (i) The trust is established and managed by a nonprofit association.
>
> (ii) A separate account is maintained for each beneficiary of the trust, but, for purposes of investment and management of funds, the trust pools these accounts.
>
> (iii) Accounts in the trust are established solely for the benefit of individuals who are disabled (as defined in section 1382c(a)(3)[1] of this title) by the parent, grandparent, or legal guardian of such individuals, by such individuals, or by a court.
>
> (iv) To the extent that amounts remaining in the beneficiary's account upon the death of the beneficiary are not retained by the trust, the trust pays to the State from such remaining amounts in the account an amount equal to the total amount of medical assistance paid on behalf of the beneficiary under the State plan under this subchapter.

The plaintiff, North Dakota Department of Human Services ("NDDHS"), is the state agency responsible in North Dakota for implementation of the Medicaid program. Defendant Center for

---

[1] "[A]n individual shall be considered to be disabled for purposes of this subchapter if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

Special Needs Trust Administration, Inc. ("Center") is a nonprofit corporation organized under the laws of Florida with its principal place of business in Clearwater, Florida. Defendant Damian Huettl is a North Dakota resident and taxpayer.

On February 5, 2002, Center made a "Declaration of Trust," establishing a pooled trust pursuant to 42 U.S.C. § 1396p, to which Center is the trustee. See Docket No. 19-1. Article 6 of the declaration of trust states:

ARTICLE 6
DISTRIBUTIONS AT THE BENEFICIARY'S DEATH

> Upon the death of a Beneficiary, any amounts that remain in the Beneficiary's Trust sub-account shall be administered so as to conform with all of the requirements of 42 U.S.C. §1396p and/or related statutes, including state statutes and regulations that are consistent with the provisions and purposes of the Omnibus Budget Reconciliation Act of 1993, amending 42 U.S.C. § 1396p and pertaining to reimbursement to the States for government assistance provided on behalf of the individual Beneficiary.
>
> Such property shall be distributed to each state in which the Beneficiary received government assistance, based on each state's proportionate share of the total government assistance paid by all of the states on the Beneficiary's behalf, to the extent that any such property is not retained by the Trust. In the Trustee's sole discretion as to specific use, any amounts retained in the Trust shall be used in accord with the following provisions:
>
> a) for the direct or indirect benefit of other Beneficiaries;
>
> b) to add disabled persons, as defined in 42 U.S.C. § 1382c(a)(3), who are indigent to the Trust as Beneficiaries; or,
>
> c) to provide disabled persons, as defined in 42 U.S.C. § 1382(a)(3), with equipment, medication, or services deemed suitable for such persons by the Trustee.

See Docket No. 19-1, p. 6.

On November 30, 2007, Allen Kemmet entered into a National Pooled Trust Joinder Agreement, adopting Center's declaration of trust, and transferred $54,450.00 to Center for deposit into the National Pooled Trust. See Docket No. 19-2. Article III of the joinder agreement states:

Article III<br>Distributions Upon the Beneficiary's Death

Any assets that remain in the Beneficiary's separate Trust sub-account at the Beneficiary's death shall be treated in accordance with the provisions below.

3.01   Assets in Trust.   If any assets remain in the Beneficiary's separate Trust sub-account at the Beneficiary's death, such assets shall be deemed surplus Trust property and shall be retained by the Trust pursuant to all of the relevant and applicable provisions of 42 U.S.C. § 1396p, including all related statutes, regulations, and/or rules.

3.02   Use of Retained Assets. In the Trustee's sole and absolute discretion, retained surplus Trust property shall be used:

a) for the direct or indirect benefit of other Beneficiaries;

b) to add disabled persons, as defined in 42 U.S.C. § 1382c(a)(3), who are indigent to the Trust as Beneficiaries; or,

c) to provide disabled persons, as defined in 42 U.S.C. § 1382c(a)(3), with equipment, medication, or such other services deemed suitable for such persons by the Trustee.

Subject to all provisions herein, gifts or devises to the Trust shall be similarly treated unless a specific purpose is specified by the donor. To the extent that any surplus Trust property is not retained by the Trust pursuant to paragraph 3.01 above, such property shall be distributed to each State in which the Beneficiary received government assistance, based on each State's proportionate share of the total government assistance paid by all of the States on the Beneficiary's behalf. For all such purposes hereunder, the Trustee and all States where the Beneficiary received government assistance are clearly identifiable residual beneficiaries and have standing to challenge any attempt by the Beneficiary or any other party to revoke this irrevocable Agreement.

See Docket No. 19-2, p. 3. Kemmet became both the grantor and the beneficiary. At the time, Kemmet was 78-years old and living in the Missouri Slope Lutheran Care Center, a licensed nursing facility in Bismarck, North Dakota.

On January 22, 2008, the Burleigh County Social Service Board ("Burleigh County"), which acts under the direction and supervision of NDDHS to administer the Medicaid program in Burleigh County, North Dakota, received a letter from Kemmet's attorney, Damian Huettl. The letter enclosed Kemmet's Medicaid application, which included a copy of the February 5, 2002 declaration of trust and the agreement executed by Kemmet on November 30, 2007. Huettl claimed that Kemmet met the Medicaid eligibility requirements and was eligible for coverage by Medicaid for skilled nursing care. A Burleigh County staff member sent the documents submitted by Huettl to NDDHS for review. Annette Bendish, an attorney with NDDHS's Legal Advisory Unit, mistakenly identified Kemmet's age to be 54-years old. Bendish directed Burleigh County to determine Kemmet's eligibility without counting the money he placed in the trust and not to consider this transfer to the trust as disqualifying Kemmet from receiving Medicaid coverage for his nursing facility care. Burleigh County determined that Kemmet was eligible for Medicaid coverage effective March 1, 2008. Kemmet received Medicaid benefits from March 1, 2008 until his death on October 8, 2008, at a total cost to the Medicaid program of $41,135.19.[2]

After Kemmet's death, NDDHS determined that Kemmet was not eligible for Medicaid, contending that his payment of $54,450.00 to Center was a transfer of an asset that caused him to be ineligible for Medicaid coverage for his nursing facility care pursuant to 42 U.S.C. § 1396p(c), N.D.C.C. § 50-24.1-02(1), and N.D. Admin. Code § 75-02-02.1-33.2.

---

[2] NDDHS has since received $21,407.81 as proceeds from the sale of a vehicle owned by Kemmet and $492.80 as refunds of insurance on Kemmet's vehicle and pre-paid private room charges at the nursing facility. See Docket Nos. 2-2 and 3-2.

5

On November 4, 2009, NDDHS commenced a state court action in the South Central Judicial District. See Docket No. 1-1. The Defendants removed the case to federal court on November 23, 2009. See Docket No. 1. The basis for removal was federal question jurisdiction under 28 U.S.C. § 1331. NDDHS filed a motion to remand on December 24, 2009. See Docket No. 8.

The complaint contains two separate causes of action:

### PLAINTIFF'S FIRST CAUSE OF ACTION

The plaintiff, for its cause of action against defendant Center, re-alleges the allegations of paragraphs 1 trough 16, and further alleges and states:

17.     Kemmet's November 30, 2007 transfer of $54,450.00 to the defendant Center was fraudulent as to the plaintiff, whether made (a) with actual intent to hinder, delay, or defraud the plaintiff; or (b) without receiving reasonably equivalent value in exchange for those transfers, because the debtor, Kemmet, intended to incur or believed, or reasonably should have believed he would incur, debts beyond his ability to pay as they became due;

18.     The plaintiff is entitled to remedies under subsection 1 of N.D.C.C. § 13-02.1-07, including the remedy of avoidance of Kemmet's November 30, 2007 transfer of $54,450.00 to the defendant Center;

19.     The plaintiff is entitled under subsection 2 of N.D.C.C. § 13-02.1-08 to the remedy of judgment against the defendant Center as first transferee of Kemmet's November 30, 2007 transfer of $54,450.00, for the actual value of the transferred assets as of November 30, 2007, the date of those transfers;

### PLAINTIFF'S SECOND CAUSE OF ACTION

The plaintiff, for its second cause of action against defendant Center, and for its cause of action against defendant Huettl, re-alleges the allegations of paragraphs 1 through 18, and further alleges and states:

20.     Defendants Center and Huettl, acting by design and in concert, wrongfully deprived plaintiff of funds totaling $41,135.19, converting that amount as it was expended by plaintiff to provide Medicaid benefits from March 1, 2008 through October 8, 2008, for which Kemmet was ineligible.

21.     The plaintiff is entitled under N.D.C.C. § 32-02-23 to recover from the defendants Center and Huettl the value of the Medicaid benefits converted,

      interest from the time of the conversion, and fair compensation for the time and money properly expended in pursuit of the value of the converted Medicaid benefits.

See Docket No. 1-1 (bold and underline in original).

NDDHS contends that federal jurisdiction is lacking because its claims do not arise under the Constitution, treaties, or laws of the United States. Center and Huettl contend federal jurisdiction exists because NDDHS must address the underlying federal law questions before it can assert its state law claims.[3]

## II. LEGAL DISCUSSION

This action was removed to federal court based upon federal question jurisdiction. The Plaintiff contends the Court lacks jurisdiction. If the Court concludes it lacks jurisdiction, the only appropriate course of action would be a remand as the Court cannot dismiss a case over which it does not have subject matter jurisdiction. See Nichols v. Harbor Venture, Inc., 284 F.3d 857, 863 (8th Cir. 2002) (vacating dismissal and directing remand because district court lacked jurisdiction); Vincent v. Dakota, Minn. & E. R.R. Corp., 200 F.3d 580, 582 (8th Cir. 2000) (noting that when a district court remands for lack of subject matter jurisdiction it also lacks jurisdiction to make any substantive rulings). The Court has a duty to examine whether it has jurisdiction. Thus, the court must determine in the first instance whether a federal question is stated on the face of the complaint. Magee v. Exxon Corp., 135 F.3d 599, 601 (8th Cir. 1998).

---

[3] On November 3, 2009, Center brought a separate action in federal district court. See Case No. 1:09-cv-072. In that case, Center contends N.D. Admin. Code §§ 75-02-02.1-31-1(4)(b) and (8)(f) are unenforceable as they are in direct conflict with federal Medicaid law.

### A.    REMOVAL JURISDICTION

"The [federal] district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Civil actions in which the federal district courts have original jurisdiction are removable. 28 U.S.C. § 1441(b). A defendant may remove a state court case to federal court only if the case could have been originally filed in federal court. Gore v. Trans World Airlines, 210 F.3d 944, 948 (8th Cir. 2000). Whether federal question jurisdiction exists is determined by the "well-pleaded complaint rule" which "provides that a federal question must be presented on the face of the properly pleaded complaint to invoke federal court jurisdiction." Id. The absence of a finding of federal jurisdiction requires the removed case to be remanded to state court. 28 U.S.C. § 1447(c). In the Eighth Circuit, "all doubts about federal jurisdiction [must be resolved] in favor of remand." Transit Cas. Co. v. Certain Underwriters at Lloyd's of London, 119 F.3d 619, 625 (8th Cir.1997).

In assessing whether federal question jurisdiction exists, it is important to remember "that a suit arises under the law that creates the cause of action." Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808 (1986) (internal quotations omitted). In this case, the action arises under N.D.C.C. §§ 13-02.1-07(1), 13-02.1-08(2), and 32-03-23. Section 13-02.1-07 lists the remedies of a creditor while section 13-02.1-08 describes the limitations of a creditor's remedies. Section 32-03-23 lays out what the presumed damages are for conversion of personal property.

Even though a cause of action is a creature of state law, the case may still arise under federal law if the complaint establishes a right to relief under state law that "requires resolution of a substantial question of federal law in dispute between the parties." Nichols, 284 F.3d at 860 (quoting Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 13 (1983)). The

complaint "must present 'some substantial, disputed question of federal law [as] a necessary element'" of the state law claim in order for federal question jurisdiction to exist. Id. (quoting Franchise Tax Bd., 463 U.S. at 13).

The Defendants contend NDDHS's claims in this action, transfer in fraud on a creditor and conversion of personal property, arose out of actions taken by Kemmet and the Defendants in compliance with 42 U.S.C. § 1396p(d)(4)(C). The Defendants further contend that the state laws that NDDHS relies on are preempted by federal Medicaid law and that NDDHS cannot assert its claims of conversion and fraudulent transfer without first addressing the federal question of the propriety of the Medicaid benefits paid.

"A federal defense, including the defense that one or more claims are preempted by federal law, does not give the defendant the right to remove to federal court." Gaming Corp. of Am. v. Dorsey & Whitney, 88 F.3d 536, 542-43 (8th Cir. 1996) (citing Caterpillar Inc. v. Williams, 482 U.S. 386, 392-93 (1987)). Removal is not supported by a federal defense even if it is anticipated in the complaint, and even if it is the only real issue in the case. Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 809 (1988). However, complete preemption is an exception to the well-pleaded complaint rule that differs from preemption used only as a defense. Gaming Corp. of Am., 88 F.3d at 543. "Complete preemption can arise when Congress intends that a federal statute preempt a field of law so completely that state law claims are considered to be converted into federal causes of action." Id. (citations omitted).

There are jurisdictional consequences that distinguish complete preemption from preemption asserted only as a defense. "The defense of preemption can prevent a claim from proceeding, but in contrast to complete preemption it does not convert a state claim into a federal claim." Gaming

Corp. of Am., 88 F.3d at 543. The United States Supreme Court and the Eighth Circuit Court of Appeals have found complete preemption exists in a number of areas. See, e.g., Metro. Life Ins. Co. v. Taylor, 481 U.S. 58 (1987) (ERISA); Oneida Indian Nation of N.Y. State v. Cnty. of Oneida, N.Y., 414 U.S. 661 (1974) (possessory interest of Native American tribes to lands obtained by treaty); Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers, 390 U.S. 557 (1968) (Labor Management Relations Act); Gaming Corp. of Am., 88 F.3d 536 (Indian Gaming Regulatory Act); Peters v. Union Pac. R.R. Co., 80 F.3d 257 (8th Cir. 1996) (Federal Railroad Safety Act); Deford v. Soo Line R.R. Co., 867 F.2d 1080 (8th Cir. 1989) (Railway Labor Act).

Federal Medicaid law delegates the management of the Medicaid program, and recovery of Medicaid funds, to the states. The states are required to have laws in place to facilitate this recovery. Accordingly, complete preemption does not apply in this case and the Court lacks subject matter jurisdiction.

      **B.**    **COMPULSORY COUNTERCLAIM**

The Defendants contend that NDDHS's state claims should have been brought as compulsory counterclaims in the pending federal court action, Case No. 1:09-cv-072. Since the Court does not have jurisdiction over this action, the Court cannot make any further determinations.

      **C.**    **ATTORNEY'S FEES AND COSTS**

NDDHS contends it should be awarded its attorney's fees and costs because the Defendants' removal is inappropriate and frivolous. "An order remanding the case may require payment of just

costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The propriety of the removal is central in determining whether to impose fees in the remand order. Maguire Oil Co. v. City of Houston, Tex., 143 F.3d 205, 209 (5th Cir. 1998).

The Court has carefully reviewed the entire record and the record in Case No. 1:09-cv-072. The Court, in its discretion, denies NDDHS's motion for attorney's fees and costs associated with the removal and remand of the action.

### III.    CONCLUSION

The complaint does not raise a substantial question of federal law and complete preemption does not apply. As such, the federal courts lack subject matter jurisdiction. This Court expresses no opinion as to whether the complaint states a valid claim under state law. That issue is best left for the North Dakota courts to resolve.

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** the Plaintiff's "Motion for Remand and for Award of Fees and Costs Under 28 U.S.C. § 1447(c)" (Docket No. 8). The motion to remand is granted and the request for attorney's fees and costs is denied. The motion for summary judgment (Docket No. 17) is **DENIED AS MOOT**. The Clerk of Court is directed to remand this action back to the District Court of the State of North Dakota, South Central Judicial District, Burleigh County.

**IT IS SO ORDERED**.

Dated this 6th day of January, 2011.

/s/ Daniel L. Hovland
Daniel L. Hovland, District Judge
United States District Court